# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JACQUELINE STOLL, | ) | 1:10cv01326 DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff Jacqueline Stoll ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on November 29, 2005, alleging disability since July 30, 2004, due to bipolar disorder, walking problems, obesity and back problems.  AR 79-84, 103. After her application was denied initially and on reconsideration, Plaintiff requested a hearing

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1  before an Administrative Law Judge ("ALJ").  AR 44, 45, 66.  ALJ Bert C. Hoffman, Jr., held a

2  hearing on November 13, 2007, and issued a decision denying benefits on January 18, 2008.  AR

3  14-23, 817-870.  The Appeals Council denied review on April 28, 2010.  AR 9-11.

4          Hearing Testimony

5          ALJ Hoffman held a hearing on November 13, 2007, in Fresno, California.  Plaintiff

6  appeared with her attorney, Melissa Proudian.  Witness Loren Wiens also appeared and testified.

7  AR 817.

8          Plaintiff testified that she was 37 years old at the time of hearing.  She was 5 feet, 5

9  inches tall and weighed 250 pounds, though her normal weight was around 210.  AR 820.  She

10  last weighed 210 three years ago and thought she gained weight because of her medications or

11  because she soothes herself with food.  AR 820.  Plaintiff currently lives at Board & Care, a

12  boarding home, and shares a room with a female roommate.  AR 821.  Her duties include wiping

13  the tables after meal time, making her bed and keeping clothes off the floor in her room.  She has

14  lived there three years based on the recommendation of Loren Wiens, her psychologist.  AR 822.

15  Plaintiff does not have a driver's license and uses the bus for transportation.  AR 823.  She last

16  worked in 2002 at the U.S. Army Commissary in Germany stocking shelves.  AR 829.

17          Plaintiff completed the ninth grade and later received her GED.  She attended an

18  extension of the University of Maryland while living on an army base in Germany, though she

19  didn't receive a degree.  Plaintiff has also completed one year at Fresno City College.  AR 823.

20  She started in business management but changed her major to horticulture because business

21  management was too difficult.  AR 826.  At the time of the hearing, Plaintiff was taking two

22  classes.  AR 826.  She was in the disabled students program and has not used a note taker, but

23  has requested additional time while taking a test.  AR 827.  Plaintiff was put on academic

24  probation but her performance improved after her medication was changed.  AR 828.

25          Plaintiff does not have children or a boyfriend.  She explained that she is "petrified" of

26  men because her father abused her mentally and physically.  AR 825.  She also testified that her

27  ex-husband abused her and that she could not forget about the abuse.  AR 850.

28

1       Plaintiff is having problems with her post-traumatic stress disorder ("PTSD") and has bad

2 dreams, gets nervous and has a "squeezing" feeling in her chest.  AR 835.  She also has anxiety

3 and sporadic suicidal thoughts.  AR 858.  She did not think she could work because she has a

4 problem with authority "apparently," and is very sensitive to criticism.  Plaintiff also gets sad,

5 irritable, annoyed easily and has trouble concentrating.  She also has problems with her knees,

6 stomach pains and headaches.  AR 836-837.  Plaintiff has back pain everyday and takes over-the-

7 counter medication for it, though she wishes she could see a doctor.  AR 839-840.

8       Plaintiff testified that she did not have problems sitting in a chair, but that she could only

9 stand and walk long enough to get to school by bus and come back- about four to five hours.  AR

10 840-841.  She goes home immediately after school because she feels protected there.  She

11 sometimes feels like she should hide herself from the world.  AR 841.  Plaintiff has no trouble

12 with personal hygiene or cleaning her room.  AR 859-860.

13       Plaintiff's depression is sporadic and always changing.  Her medications were changed

14 and have recently started helping.  AR 848.  Plaintiff thought that she felt depressed, on average,

15 for at least half of the month.  AR 852.  She has flashbacks of violence that can trigger

16 depression.  AR 852.  On those days, she feels worthless and ends up watching movies and

17 eating.  AR 853.  Plaintiff can keep up with the movie plot and her concentration is okay.  She

18 can watch two to three movies at a time.  AR 854.

19       Plaintiff sees Loren Wiens about once a month for therapy, though she could go as much

20 or as little as she wants.  Mr. Wiens feels that she has the potential to work, but he has also seen

21 her unstable at times.  AR 843-844.  Plaintiff would like to work with people.  AR 844.  She also

22 goes to group therapy at school, twice a week.  AR 847.

23       Plaintiff's parents live in Germany and she e-mails them almost everyday.  She has a

24 brother and sister but does not have a relationship with them.  AR 844-845.  Plaintiff is

25 "somewhat" close to her roommate, but only because they live in the same room.  For fun, they

26 watch movies on television and go to The Dollar Store.  AR 846.

27       Mr. Wiens testified that he has been Plaintiff's social worker since September 2003 and

28 sees her an average of two times per month.  AR 863.  He helps her get connected with services

that would benefit her and provides therapy.  He also often gets telephone calls from Plaintiff when she is frantic and upset about something.  AR 864-865.  Plaintiff has been diagnosed with major depressive disorder, recurrent, severe, without psychotic features and chronic PTSD.  AR 866.  Her most predominant symptoms are related to the PTSD and include decompensation under stress, paranoia, difficulty getting along with others and mistrust of authority.  AR 866.  She can also lose the ability to concentrate and focus very easily and can "go paralyzed emotionally at times because of stress, anxiety."  AR 866-867.  Her depression is "almost a resulting thing" from these symptoms.  AR 867.

Mr. Wiens did not believe that Plaintiff could currently work at any job for eight hours a day, five days a week.  He "want[s] to believe" that she has the functioning and intelligence to work in the future, but her emotional fragility prevents her from working now.  Her fragility can impair her memory and her ability to carry out tasks.  He believed that Plaintiff was motivated to work in the future.  She tries to go to school but it seems like things keep falling apart because of "emotional havoc in her life where she falls apart emotionally."  AR 867.

Medical Record

Plaintiff began treating with Fresno County Mental Health in September 2003 and continued to receive treatment through September 4, 2007.  She saw Loren Wiens, L.C.S.W., for complaints related to her PTSD and depression.  AR 407-629, 752-805, 752-805.

On January 24, 2004, Plaintiff saw Benjamin Chang, M.D., for a consultive orthopedic examination.  She complained of chronic low back pain that has been worsening over the years.  Plaintiff had not had any injections, surgeries or physical therapy and was taking Vicodin and 800mg Motrin.  On examination, Plaintiff was obese and in no acute distress.  She could walk on toes and heels and did not use an assistive device.  Straight leg raising was negative.  Plaintiff had mild tenderness on palpation, but there was no spasm, crepitus effusion or deformities.  Motor strength was 5/5 throughout with normal muscle bulk and tone.  Sensation was intact to light touch and pinprick.  AR 335-337.

Dr. Chang diagnosed chronic low back pain, likely from lumbar strain.  He believed that she could stand and walk for about six hours and could sit without limitation.  Plaintiff could lift

4

and carry twenty pounds frequently and fifty pounds occasionally.  She could occasionally bend, stoop and crouch.  AR 336-337.

Also on January 24, 2004, Plaintiff saw Hani Khouzam, M.D., for a psychiatric evaluation.  Plaintiff reported that she would be severely depressed if she did not take her medication.  She also complained of anxiety and outbursts of anger.  Plaintiff reported that she was diagnosed with bipolar disorder in 1995, has had three suicide attempts and was physically and mentally abused by her father.  Plaintiff was currently taking Depakote, Wellbutrin, Neurontin, Buspar and pain medications.  AR 338-339.

Plaintiff told Dr. Khouzam that she was unable to work because when she worked in the past, she got into conflicts with her coworkers due to difficulty controlling her rage.  On examination, Plaintiff was cooperative with an appropriate affect.  She indicated that she was tired and had gained twenty five pounds in the past three months.  Plaintiff was alert and oriented to time, place, person and current situation and had good recent, remote and immediate memory.  Plaintiff had a good fund of knowledge in the area of business, though in the past she could not perform a job where people were "practicing mobbing" on her.  In the future, Plaintiff planned to pursue business administration jobs.  Plaintiff could follow a three-step command and insight and judgment were intact.  AR 339-340.

Dr. Khouzam diagnosed bipolar disorder, mixed, only stable when she takes her medications.  He also noted that Plaintiff had stressors related to living in a board and room facility, a current conflict with her boyfriend and ongoing financial pressure.  Her GAF was 65.  Dr. Khouzam opined that Plaintiff could perform repetitive tasks.  She could also perform complex tasks if she was not anxious.  Plaintiff could accept instruction from supervisors, but she worries that she would sometimes lose control of her anger.  Plaintiff was putting "extreme effort" into her studies and had obtained a "B," though she was worried that she would fail if she did not take her medication and attend therapy.  Due to her past history of abuse, Plaintiff was worried that any unusual stress many cause her to become frustrated and go into severe depression.  She also worried that stress can cause her to relapse into a recurrence of suicidal ideations and intentions.  AR 340-341.

On March 5, 2004, State Agency physician Evangeline Murillo, M.D., completed a Mental Residual Functional Capacity Assessment form.  She opined that Plaintiff was moderately limited in her ability to carry out detailed instructions, but was capable of understanding and remembering adequately for very simple, one to two step tasks along with more complex tasks.  She could sustain concentration and persistence sufficiently to perform very short and simple instructions consistently in the workplace and would not require additional supervision.  Plaintiff would not have difficulty adapting to normal changes in the workplace. AR 342-344.

In an accompanying Psychiatric Review Technique form, Dr. Murillo opined that Plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace.   AR 356-369.

Also on March 5, 2004, State Agency physician Brian Ginsburg, M.D., completed a Physical Residual Functional Capacity Assessment form.  He opined that Plaintiff could lift fifty pounds occasionally, twenty five pounds frequently, stand and/or walk for six hours and sit for six hours.  Plaintiff could occasionally stoop, kneel and crouch.  AR 346-354.

In August 2004, Plaintiff reported sleeping problems, increased anxiety and mood swings. Her medications were changed.  AR 544.  On September 7, 2004, Plaintiff was still having problems sleeping, but felt good overall.  AR 537.

September 10, 2004, x-rays of Plaintiff's left knee were normal.  AR 653.

On October 9, 2004, Plaintiff was taken to Fresno County Human Services for a Crisis Assessment on a 5150 after she reported suicidal ideations following a fight with her landlord. Plaintiff believed that she was being treated unfairly based on how other residents were treated. On examination, she appeared calm and oriented and denied suicidal ideations.  She did not meet 5150 criteria.  Plaintiff was hospitalized, however, because she was making threats to possibly avoid going home. AR 514-518.

1    Plaintiff was seen in orthopedics on October 19, 2004, for complaints of bilateral knee

2  pain.  No surgical intervention was recommended at the time and Plaintiff was told to lose

3  weight and exercise.  AR 649.

4    On October 27, 2004, Plaintiff returned to therapy after her hospitalization.  She reported

5  that she was satisfied with her medications.  AR 508.

6    From December 2004 through December 2005, Plaintiff generally reported that she was

7  stable on her medications and that her symptoms had decreased.  AR 445, 469, 476, 479, 492.

8    On one instance in 2005, Mr. Wiens questioned whether Plaintiff was telling the truth

9  even though she appeared sincerely honest and realistic.  AR 489.  On another instances in 2005,

10  Mr. Wiens believed that Plaintiff was exaggerating things and perceiving them to be much more

11  oppressive than they actually were.  AR 466.

12    On June 27, 2005, Dr. Murillo completed a second Mental Residual Functional Capacity

13  assessment.  She opined that Plaintiff was moderately limited in her ability to understand,

14  remember and carry out detailed instructions, but was capable of sustaining simple, repetitive

15  tasks with adequate pace and persistence.  Plaintiff could adapt and relate to coworkers and

16  supervisors.  AR 370-372.

17    Dr. Murillo also completed a second Psychiatric Review Technique form on June 27,

18  2005.  She opined that Plaintiff had mild restrictions in activities of daily living, mild difficulties

19  in maintaining social functioning and mild difficulties in maintaining concentration, persistence

20  or pace.  AR 376-389.

21    Plaintiff had a Kenalog injection in her left knee on November 29, 2005.

22    On January 6, 2006, Plaintiff was discharged from group therapy so that she could attend

23  community college.  She had met her goals of reducing depression and anxiety by forty percent

24  and isolation by seventy five percent.  AR 434.

25    On February 14, 2006, Plaintiff reported that she was okay, with good tolerance of her

26  medication and no side effects.  She believed that the medications were decreasing her

27  depression and anxiety.  AR 427.

28

1    In March 2006, Mr. Wiens noted that Plaintiff appeared calm, but spacey and sedated,

2    possibly due to her medications.  AR 424, 425.  Also in March 2006, Plaintiff talked to Mr.

3    Wiens about the possibility of working part time.  She seemed anxious about it, however.  Mr.

4    Wiens explained that work would affect her general relief and that financially, it might not be

5    worth it.  It may help her gain experience for future employment, however.  He encouraged

6    Plaintiff to talk to her vocational counselor at school.  AR 421.

7    In April 2006, Plaintiff reported feeling good, with good medication tolerance and no side

8    effects.  Plaintiff felt that the medications helped her feel less nervous.  She denied anxiety or

9    depressive symptoms.  She was also getting along well at the boarding home.  AR 419, 420.

10    In July and August 2006, Plaintiff was doing well and was stable.  AR 414, 416.

11    On October 31, 2006, Plaintiff appeared quite stable with no complaints initially, but

12    presented with some blunted/flat affect along with some mild movements of her feet and jaw.

13    She appeared more heavily medicated and more flat, dazed and unemotional.  She admitted to

14    some depression about once a month and some mood swings with irritability.  AR 409.

15    A left foot x-ray taken on November 15, 2006, showed no evidence of bony injury.  AR

16    632.

17    Plaintiff saw Susan Hulak, N.P., on December 13, 2006, and reported feeling sad and

18    hopeless.  Her mood and affective range were dysphoric.  Nurse Hulak changed her medications.

19    AR 804.

20    On January 25, 2007, Plaintiff saw Greg Hirokawa, Ph.D., for a consultive psychiatric

21    evaluation.  Plaintiff was cooperative and her effort was fair throughout the interview.  Plaintiff

22    reported a diagnoses of bipolar disorder and PTSD.  She also reported depression, difficulty

23    being around other people, poor concentration, paranoia, suicidal thoughts and mood swings.

24    Her depression began in her twenties and her PTSD was a result of abuse by her father and ex-

25    husband.   She indicated that her symptoms have been improving with medication.  AR 722.

26    On mental status examination, her speech was pressured at times.  Her mood appeared

27    depressed and her affect was appropriate to content.  Plaintiff reported her sleep as poor and her

28    appetite as good.  Plaintiff denied current suicidal ideation.  Intellectual functioning was within

the average range and recent/remote memory appeared to be intact.  Plaintiff was able to perform

a simple three-step command and concentration for conversation was adequate.  Plaintiff

reported that she does laundry, has a few friends and goes to church.  AR 723-725.

Dr. Hirokawa diagnosed depressive disorder, not otherwise specified, and personality

disorder, not otherwise specified.  Plaintiff also had economic, social environment and health

stressors.  He believed that her depression was within the mild range, noting that her

communication skills were fair and that her response to treatment was fair.  There was a fair

likelihood that this would improve in the next twelve months.  Plaintiff had a positive work

history consisting of maintaining a job for an extended period and her attitude towards seeking

employment is fair.  Plaintiff's personality disorder consisted of poor interpersonal skills.  AR

726.

Dr. Hirokawa believed that Plaintiff had mild limitations in her ability to (1) remember

locations and work-like functions; (2) understand, remember and carry out very short and simple

instructions; (3) understand and remember detailed instructions; (4) maintain attention and

concentration for extended periods; (5) accept instruction from a supervisor and respond

appropriately; (6) perform activities within a schedule, maintain regular attendance and be

punctual; (7) function independently and sustain and ordinary routine without special

supervision; and (8) interact with coworkers.  Plaintiff was mildly to moderately limited in her

ability to (1) complete a normal workday and workweek without interruption from

psychologically based symptoms; (2) perform at a consistent pace; and (3) withstand the stress of

a routine workday.  The likelihood of Plaintiff emotionally deteriorating in a work environment

was minimal to moderate.  AR 726-727.

On January 27, 2007, Plaintiff saw Abbas Mehdi, M.D., for a consultive orthopedic

examination.  Plaintiff complained of depression, PTSD, memory problems and bilateral knee

problems.  On examination, Plaintiff walked without evidence of a limp.  Range of motion in the

lower extremities was within normal limits.  There was no evidence of joint pain, swelling,

tenderness or inflammation.  Pulses, reflexes and motor strength were normal.  Sensation to

pinprick and light touch was normal throughout the lower extremities.  Dr. Mehdi opined that

9

1  Plaintiff would not have any physical limitations, though she may have limitations related to her

2  psychiatric disorders.  AR 728-731.

3      On January 30, 2007, Plaintiff told Nurse Hulak that she was doing well overall.  Her

4  mood was anxious and her affect was restricted.  Nurse Hulak changed her medications.  AR

5  803.    Plaintiff saw Mr. Wiens on January 31, 2007.  She reported that she was only taking a

6  horticulture class, which helped her relax and reduce stress.  AR 802.

7      On February 21, 2007, State Agency physician Harvey Biala, M.D., completed a Mental

8  Residual Functional Capacity assessment.  Dr. Biala opined that Plaintiff was moderately limited

9  in her ability to understand, remember and carry out detailed instructions, but was capable of

10  understanding, remembering and carrying out simple instructions, performing activities without

11  additional supervision, maintaining socially appropriate behavior, interacting appropriately with

12  others and responding to changes in work settings.  AR 732-734.

13      Dr. Biala also completed a Psychiatric Review Technique form on February 21, 2007.  He

14  opined that Plaintiff had mild restrictions in activities of daily living, mild difficulties in

15  maintaining social functioning and moderate difficulties in maintaining concentration,

16  persistence or pace.  AR 738-751.

17      Plaintiff saw Nurse Hulak on March 14, 2007, and reported feeling really depressed and

18  suicidal.  She had no plan and knew not to act on it.  Plaintiff denied manic symptoms or

19  psychosis.  Her mood was depressed and her affect was normal.  Intelligence was average and

20  insight and judgment were normal.  Nurse Hulak increased her medications.  AR 800.

21      On April 9, 2007, Mr. Wiens admitted Plaintiff to Psychiatric Assessment Center for

22  Treatment on a 5150 after she expressed suicidal feelings resulting from verbal abuse by a friend.

23  When she was admitted, Plaintiff said she felt better and was not suicidal.  AR 773-795.  Plaintiff

24  decided not to stay and deal with it at home.  AR 770.

25      Plaintiff saw Nurse Hulak on June 13, 2007, and reported that her anxiety and flashbacks

26  were worsening.  She also reported hearing voices occasionally.  Plaintiff's mood was anxious

27  and her affect was restricted.  Nurse Hulak increased her medications.  AR 765.

28

On July 18, 2007, Plaintiff told Mr. Wiens that she went from feeling numb and overmedicated to very alive, alert, anxious, with a heightened startle response and more fear/paranoia. AR 758.

On July 20, 2007, Plaintiff saw Dr. Murillo at Fresno County Mental Health after seeking an urgent medical evaluation for worsening anxiety, flashbacks and panic attacks. Plaintiff's mood was anxious and her affect was normal. Insight and judgment were limited and thought process was fair. Dr. Murillo added Inderal. AR 757.

In August 2007, Plaintiff reported to Mr. Wiens that she was doing okay overall and felt better on her new medications. AR 753, 755. She was diagnosed with major depressive disorder, recurrent, severe, without psychotic features. AR 755.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of major depressive disorder, recurrent, without psychotic features. AR 19. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels involving simple, repetitive tasks. AR 20. With this RFC, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy. AR 22-23.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must

1 apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

2 This Court must uphold the Commissioner's determination that the claimant is not disabled if the

3 Commissioner applied the proper legal standards, and if the Commissioner's findings are

4 supported by substantial evidence.  *See* *Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d

5 509, 510 (9th Cir. 1987).

6 <center>**REVIEW**</center>

7        In order to qualify for benefits, a claimant must establish that she is unable to engage in

8 substantial gainful activity due to a medically determinable physical or mental impairment which

9 has lasted or can be expected to last for a continuous period of not less than 12 months.  42

10 U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of

11 such severity that she is not only unable to do her previous work, but cannot, considering her age,

12 education, and work experience, engage in any other kind of substantial gainful work which

13 exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

14 The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

15 Cir. 1990).

16        In an effort to achieve uniformity of decisions, the Commissioner has promulgated

17 regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

18 C.F.R. §§ 404.1520 (a)-(g).  Applying the process in this case, the ALJ found that Plaintiff: (1)

19 had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an

20 impairment or a combination of impairments that is considered "severe" (major depressive

21 disorder, recurrent, without psychotic features) based on the requirements in the Regulations (20

22 CFR §§ 404.1520(c), 416.920(c)); (3) does not have an impairment or combination of

23 impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P,

24 Regulations No. 4; (4) has no past relevant work; but (5) can perform jobs that exist in significant

25 numbers in the national economy.  AR 19-23.

26        Here, Plaintiff argues that the ALJ (1) erred in formulating the RFC; (2) improperly

27 analyzed her credibility; and (3) improperly analyzed the third party reports.

28

<center>12</center>

**DISCUSSION**

1

A.   RFC Analysis

2

3        Plaintiff first argues that the ALJ failed to incorporate all of Dr. Hirokawa's limitations

4   into the RFC finding and instead found only a limitation to simple, repetitive tasks.  Plaintiff

5   contends that a proper RFC would have required the assistance of a Vocational Expert.

6        In his decision, the ALJ noted Dr. Hirokawa's limitations, including his finding that

7   Plaintiff was "mildly to moderately" limited in her ability to complete a normal

8   workday/workweek and withstand normal work stresses.  AR 22.  He also set forth Dr. Biala's

9   finding that Plaintiff could perform simple, repetitive tasks.  AR 22.  The ALJ then decides to

10  give Dr. Biala's opinion significant weight as it is "consistent with those of the consultive

11  examiners and the claimant's own testimony."  AR 22.  Based on this analysis, the ALJ finds that

12  Plaintiff is capable of simple, repetitive tasks with no additional limitations.  AR 22.

13       The ALJ's analysis, however, is not accurate or complete.  While the opinions are

14  consistent insofar as the doctors believe that Plaintiff can perform simple, repetitive tasks, Dr.

15  Hirokawa notes additional limitations.  As the ALJ recognized, yet failed to adequately discuss,

16  Dr. Hirokawa found Plaintiff "mild to moderately" limited in her ability to complete a normal

17  workday/workweek and to withstand normal work stress.  Dr. Hirokawa also found that Plaintiff

18  was "mildly to moderately" limited in her ability to perform at a consistent pace and had a mild

19  to moderate likelihood of emotional deterioration in the workplace- two limitations that the ALJ

20  did not acknowledge at all.

21       An ALJ is entitled to reject the opinion of a consultive examiner, which is entitled to

22  greater weight than the opinion of a nonexamining physician, for specific and legitimate reasons.

23  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995); *Pitzer v. Sullivan*, 908 F.2d 502, 506

24  (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

25       Here, however, the ALJ did not explain why he rejected any of the four additional

26  limitations set forth by Dr. Hirokawa.  In some instances where the ALJ fails to make his analysis

27  clear, his rationale can be supported where "specific, legitimate inferences [can] be drawn" from

28  the opinion.  *Magallanes v. Bowen,* 881 F.2d 747, 755 (9th Cir. 1989).  The Court cannot draw

such inferences here, especially where the ALJ failed to even recognize two of the limitations.  In

discussing Dr. Hirokawa's opinion, the ALJ states that Plaintiff told him that her main problem

with working was "being late" and "admitted" that she could perform all activities of daily living.

AR 22.  He also notes that Dr. Hirokawa assessed a GAF of 61.  Other than these statements,

which may or may not have been intended to reject the additional limitations, the ALJ does not

address his findings as to the remainder of Dr. Hirokawa's assessment.

    Moreover, neither Plaintiff's statements to Dr. Hirokawa nor the ALJ's finding that she

was stable on medication, necessarily contradict Dr. Hirokawa's "mild to moderate" limitations.

To the extent that Defendant suggests otherwise, the argument is based on impermissible post

hoc rationalizations.  *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (A reviewing court

cannot affirm an ALJ's decision denying benefits on a ground not invoked by the

Commissioner.).

    In any event, failure by the ALJ to articulate or explain the weight given to the reports of

the examining or consultative physicians can be harmless error.  See *Curry v. Sullivan*, 925 F.2d

1127, 1129 (9th Cir.1991).  Here, the ALJ's failure to discuss the additional non-exertional

limitations is harmless.  An ALJ must account for non-exertional limitations only if they

"significantly limit the range of work permitted by [plaintiff's] exertional impairments."

*Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 576-77 (9th Cir.1988).  Multiple

moderate mental limitations alone do not significantly limit a person's ability to perform work.

See *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir.2007) (holding that multiple mild and

moderate depression-related limitations did not significantly limit the plaintiff's ability to do

work beyond the exertional limitations).  Therefore, the "mild to moderate" non-exertional

limitations at issue would not have warranted inclusion in the RFC finding and would not have

made the ALJ's reliance on the Grids at step five improper.  *Desrosiers*, 846 F.2d at 577 (a

vocational expert is only required where a non-exertional limitation is significantly disabling and

affects a claimant's ability to complete work listed in the grids).

1    B.    Plaintiff's Credibility

2          Plaintiff next argues that the ALJ discounted her testimony without explanation.

3          In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

4    pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

5    subjective complaints:

6              An ALJ is not "required to believe every allegation of disabling pain" or other
       non-exertional impairment.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).
7      However, to discredit a claimant's testimony when a medical impairment has been
       established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan*,
8      169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834).  The ALJ must "cit[e] the reasons why
       the [claimant's] testimony is unpersuasive." *Id.*  Where, as here, the ALJ did not find
9      "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the
       claimant's testimony must be clear and convincing." *Id.*

10
               Social Security Administration rulings specify the proper bases for rejection of a
11     claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be
       supported by reasons that do not comport with the agency's rules.  *See* 67 Fed.Reg. at
12     57860 ("Although Social Security Rulings do not have the same force and effect as the
       statute or regulations, they are binding on all components of the Social Security
13     Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see*
       *Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at
14     step three of the disability determination was contrary to agency regulations and rulings
       and therefore warranted remand).  Factors that an ALJ may consider in weighing a
15     claimant's credibility include reputation for truthfulness, inconsistencies in testimony or
       between testimony and conduct, daily activities, and "unexplained, or inadequately
16     explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*,
       885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

17         The ALJ began his credibility analysis by setting out Plaintiff's testimony, including her

18   belief that she cannot work because she "responds poorly to criticism and becomes depressed,

19   irritable and tearful..."  AR 21.  He also set forth Plaintiff's testimony that she is afraid of men

20   and has flashbacks from past physical abuse.  AR 21.

21         Contrary to Plaintiff's contention, the ALJ did not summarily discount her testimony.  For

22   example, the ALJ noted that Plaintiff worked as a bilingual secretary in a law office while in

23   Germany and until she came to the United States in 2002, attended the University of Maryland

24   while in Germany, lives in a Board and Care house, where she is doing well, and takes classes at

25   Fresno City College.  AR 21.  He also noted that Plaintiff testified that she could shop, take

26   public transportation, use a computer, perform her assigned chores at the Board and Care house

27   and keep in contact with her family in Germany.  AR 21.  The ALJ was entitled to examine

28

                                             15

1   Plaintiff's daily activities and compare her activities to her allegations.  Plaintiff argues that these

2   abilities do not translate into her abilities in a work setting, and while this may be true, it does not

3   prevent the ALJ from examining her testimony to determine if she is more functional than he

4   alleges.  *See eg.*, *Valentine v. Comm'r Soc. Secy.*, 574 F.3d 685, 693 (9th Cir. 2009) ("The ALJ

5   recognized that this evidence did not suggest Valentine could return to his old job at Cummins,

6   but she thought it did suggest that Valentine's later claims about the severity of his limitations

7   were exaggerated.").

8       Next, the ALJ noted Plaintiff's testimony where she acknowledged that Mr. Wiens thinks

9   she has the potential to work, as well as her testimony that she would like to work with people.

10  AR 21, 844.  Plaintiff's desire to work with people seems to contradict her testimony that she

11  cannot work because of problems with authority, sensitivity to criticism, and the fact that she is

12  easily annoyed.  The ALJ may use "ordinary techniques" in addressing credibility.  *Light v. Soc.*

13  *Sec. Admin.*, 119F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from

14  the evidence."  *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

15      The ALJ also explained that Plaintiff was stable on her medications.  AR 22.  Indeed,

16  many of the exhibits that the ALJ cites in support indicate that Plaintiff felt that her medications

17  were working to decrease her depression and anxiety.  AR 415, 427, 445, 764.  During her most

18  recent visits with Mr. Wiens in August 2007, Plaintiff reported that she was doing okay overall

19  and felt better on her new medications.  AR 753, 755.  Similarly, Plaintiff testified at the

20  November 2007 hearing that her medications were changed and have recently started helping.

21  AR 848.  *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)

22  (ALJ's finding that symptoms improved with medication was valid consideration in assessing

23  claimant's credibility).

24      Finally, the ALJ explained that the despite Plaintiff's claims that she could not work, the

25  medical opinions imposed mild to moderate limitations, at most, and all agreed that she could

26  perform simple, repetitive tasks.  While the ALJ may not look solely to the medical evidence to

27  reject a claimant's testimony, the ALJ may rely on the evidence as one factor in the analysis.

28  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

1    Therefore, based on the above, the ALJ's analysis of Plaintiff's subjective complaints was

2    supported by substantial evidence and was free of legal error.

3    C.      Lay Witness Testimony

4            Finally, Plaintiff argues that the ALJ failed to properly consider the testimony of Loren

5    Wiens and the statement from Cheryl Johnson.

6            "In determining whether a claimant is disabled, an ALJ must consider lay witness

7    testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113 (9th Cir.

8    2009) (*citing Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir.2006)); *see also* 20 C.F.R. §§

9    404.1513(d)(4), (e).  Such testimony is competent evidence and " cannot be disregarded without

10   comment." *Id.* (*citing Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996)).  If an ALJ

11   disregards the testimony of a lay witness, the ALJ must provide reasons that are germane to each

12   witness.  Further, the reasons "germane to each witness" must be specific.  *Stout*, 454 F.3d at

13   1054 (explaining that "the ALJ, not the district court, is required to provide specific reasons for

14   rejecting lay testimony").

15           The ALJ summarized Mr. Wiens testimony, including Plaintiff's symptoms and his belief

16   that Plaintiff cannot currently work.  AR 21.  Plaintiff is correct that the ALJ did not specifically

17   explain why he rejected Mr. Wiens testimony, but this does not warrant remand.  Mr. Wiens'

18   testimony describing Plaintiff's symptoms, including her difficulty handling stress, mistrust of

19   authority and difficulty getting along with others, is similar to Plaintiff's description of her

20   symptoms.  This Court had determined that the ALJ's rejection of Plaintiff's subjective

21   testimony was proper, and because Plaintiff's testimony was similar to that of Mr. Wiens, "it

22   follows that the ALJ also gave germane reasons for rejecting [his] testimony." *Valentine v.*

23   *Comm'r Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir.2009).

24           As to the ALJ's failure to explain why he rejected Mr. Wiens' testimony that Plaintiff

25   could not currently work, the ALJ need not discuss testimony that is not significant or probative.

26   *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.1984).  Whether a claimant

27   can work is a decision reserved for the Commissioner, making Mr. Wiens' opinion on the issue

28

1   irrelevant.  Moreover, whether Plaintiff can work *currently* is not the standard for determining

2   disability.

3          Similarly, although the ALJ did not discuss Ms. Johnson's third party statement, her

4   statements were similar to Plaintiff's statements, which the Court has found were properly

5   rejected by the ALJ.  For example, Ms. Johnson declared that Plaintiff has difficulty getting

6   along with others and that she has trouble with authority.  She also stated that Plaintiff does not

7   handle stress or changes in routine well, and that she has good days and bad days.  AR 116, 119.

8   This testimony is not much different than Plaintiff's testimony and it therefore follows that the

9   ALJ gave germane reasons for rejecting it.  *Valentine,* 574 F.3d at 694.

10         The ALJ's analysis of the third party statements was therefore supported by substantial

11   evidence and free of legal error.

12                                          **CONCLUSION**

13         Based on the foregoing, the Court finds that the ALJ's decision is supported by

14   substantial evidence in the record as a whole and is based on proper legal standards.

15   Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

16   Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in

17   favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,

18   Jacqueline Stoll.

19

20         IT IS SO ORDERED.

21      **Dated:    May 20, 2011**            _____ /s/ **Dennis L. Beck**_____
                                              UNITED STATES MAGISTRATE JUDGE
22

23

24

25

26

27

28